IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2005 AUG 26  P 3: 28

| | |
|---|---|
| GEORGE C. HARRIS,<br>P.O. Box 127<br>Cheltenham, MD 20623,<br><br>and<br><br>DORIS J. HARRIS<br>P.O. Box 127<br>Cheltenham, MD 20623,<br><br>Plaintiffs,<br><br>v.<br><br>EXPERIAN INFORMATION<br>SOLUTIONS, INC.,<br>505 City Parkway West<br>Orange, CA 92668<br>Serve: The Corporation Trust<br>Incorporated<br>300 East Lombard Street<br>Baltimore, MD 21202<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

AW 05 CV 2355

## COMPLAINT

Comes Now Plaintiffs George C. Harris and Doris J. Harris by and through undersigned counsel and respectfully submits this Complaint. In support thereof, Plaintiffs state as follows:

I.
Parties

Plaintiff George C. Harris is a domiciliary of the State of Maryland. He is married to Plaintiff Doris J. Harris, who is also a domiciliary of the State of Maryland. Together they are referred to herein as the "Harrises" or Plaintiffs Mr. Harris in his former employment held very high security clearances associated with his positions. He is presently unable to hold positions which require such clearances but for the conduct of the Defendants as hereafter described. Mr. Harris was also previously employed by the United States Navy and is now retired.

2. Defendant Experian Information Solutions, Inc ("Experian") is an Ohio Corporation that does business in the State of Maryland Experian is a "credit reporting agency" as the term is defined in 15 U.S.C. § 1681a(f). Upon information and belief, Experian prepares and furnished consumer reports to third parties by means and facilities of interstate commerce.

## II.

## Jurisdiction

3   This Complaint alleges violations of the Fair Credit Reporting Act (15 U.S.C.S. §§1681 et seq.). Plaintiffs' Complaint raises a federal question arising under the law of the United States This Court has jurisdiction pursuant to 28 U.S.C.S. §1331.

## III.

## Facts

4   On March 24, 2000, the Harrises refinanced their home by taking out a second mortgage loan at Bank of America, N.A. ("BOA" The principal amount of the loan was

$61,227.00 and the rate of interest on the loan was eleven (1 percent. The BOA loan number for this transaction was 311002699699 (referred to herein as "the original loan number").

5. After receiving the loan, the Harrises received consolidated bank statements and loan payment books in the original loan number on those documents.

6. Effective May 20, 2002 and unbeknown to the Harrises, BOA changed the loan number on the Harrises loan when BOA began utilizing new software for its computer systems. The new loan number was 7011689713 (referred to hereinafter as the "new loan number"). BOA, however, did not notify the Harrises of the change nor did it send them a new loan payment book. In an effort to meet the obligations under the mortgage, either Mr. or Mrs. Harris would travel to the BOA branch offices in Upper Marlboro, Maryland to make payments in person. The branch, however, regularly refused to accept the funds since the Harrises did not have the new loan number and the teller could not post the mortgage payment to the loan account. (Apparently, the old loan number was not cross referenced to the new loan number and the Harrises did not know that the new loan number even though the Harrises brought coupons with the old loan number on them.) This continued for four (4) months.

7. As a result of the forgoing, BOA reported that the loan, as registered in BOA's records by the new loan number, was not being paid according to its terms. Notwithstanding, the Harrises never received any communication, either written or oral, from BOA informing them that the loan payments were late. Despite attempts by the Harrises to cure the problem by telephone, at first, on approximately a weekly and then monthly basis, the Harrises could not cure the problem.

8. On or about December 27, 2002, United Guaranty Residential Insurance Company ("United Guaranty") sent a letter to Mr. and Mrs. Harris informing them United Guaranty "has paid Bank of America the balance due on [their] second mortgage" and that the loan was assigned to United Guaranty. According to United Guaranty, the amount of the debt assigned was $60,890.54.

9. Even though United Guaranty purchased and paid "the balance due" on the loan, on or about December 27, 2002, BOA claimed that the Harrises owed BOA $4,509.03 This was disclosed to the Harrises by an eleven pm telephone call from BOA. This was a false claim. Once the Harrises discovered that BOA was reporting the false claim, the Harrises repeatedly tried for several months to have BOA correct the error; however, BOA repeatedly refused to acknowledge or correct the mistake even though it was continually brought to BOA's attention

10. On January 8, 2003, BOA sent Mr. and Mrs. Harris a letter informing them that "Bank of America has assigned, or is the process of assigning the [Harris] loan to United Guaranty." The letter refers to the new loan number and informs the Harrises that "all future correspondence should be directed to United Guaranty" once they receive written notification from Untied Guaranty regarding its purchase of the mortgage loan.

11. On January 16, 2003, United Guaranty sent the Harrises a Statement of Account ("Statement"). The Statement set forth the debt that the Harrises then owed United Guaranty. The Harrises called United Guaranty for the total amount owed to them in order to bring the account current United Guaranty advised the Harrises of the balance by mail. The Harrises thereupon paid the arrearages. Thereafter, the Harrises made the

required installment loan payments to United Guaranty and remained current on all payments due under the loan

12    From on or about December 27, 2002 through June 2004, both BOA and United Guaranty provided credit reporting agencies with inaccurate and incorrect information regarding the Harris' loan.

13.    On or about July 29, 2003, the Harrises notified Experian that the information that BOA and United Guaranty provided was inaccurate. On or about August 22, 2003, the Harrises notified Equifax Information Services, LLC, ("Equifax") Experian and TransUnion, all of which are consumer reporting agencies, that the information BOA and United Guaranty provided was inaccurate.

14    In a April 2004 credit report produced by Experian, it was reported inaccurately and incorrectly the United Guaranty loan was opened in "3-2000", the monthly payment amount was "0" and the "status" of the loan was "Collection account" even though United Guaranty did not obtain the loan until January 2003 and the Harrises paid monthly installments on the loan.

15    On or about May 20, 2004, the Harrises refinanced their home and paid off the loan held by United Guaranty in full. This was done at a rate of interest above market because of the wrongfully impaired credit rating caused by the Defendants.

16.    Through June 2004, Experian continued to report inaccurately with respect to the United Guaranty account. For example, in June 2004, the following information was inaccurately and incorrectly reported in an Experian credit report:

a. The account was a "collections account" even though the account was never in collections and the Harrises paid all installments of this account timely since United Guaranty assumed responsibilities for the loan; and

b. That the loan was in "collection as of 5-2004."

17. The Harrises allege upon information and belief that Experian sent an Automated Consumer Dispute Verification Form ("ACDV") to United Guaranty in response to the Harrises July 29, 2003, complaint. The Harrises further allege upon information and belief that United Guaranty reported on August 7, 2005, that the Harrises' version of the dispute was correct, i.e., that their account with United Guaranty was current. However, Experian did not correct its credit reports. In fact, Experian incorrectly reported on September 16, 2003, that the status of the United Guaranty account was: "Collection account" and "This item was verified on 8-2003 and remained unchanged."

18. The Harrises allege upon information and belief that Experian did not forward to BOA and/or United Guaranty disputes that they raised with respect to the reporting of their accounts, including, but not limited to responding to their August 22, 2003, letters.

19. The Harrises allege upon information and belief that Experian continually failed to accurately report information that it received from BOA and/or United Guaranty.

20. As a result of the foregoing the Harrises have been injured and are entitled to damages. The injuries sustained by the Harrises include, but are not limited to:

a. Denial of credit;

b. Reduction of credit in existing credit accounts;

c. Loss if income due to the inability to refinance their mortgage from the 11% rate charged first by BOA and then by Untied Guaranty;

d.  Loss of income due to the increased interest rates on existing credit accounts;

e.  Damage to professional reputation;

f.  Loss of employment opportunities, including the inability to secure positions at Home Depot and Sears following credit examination;

g.  Damage to their home as a result of being unable to conduct necessary repairs;

h.  Loss of quality of life, including emotional stress and trauma; and

i.  The incursion of attorneys' fees.

## IV

## FIRST CAUSE OF ACTION

### Violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 by Experian.

21. The Harrises incorporate all factual allegations contained in paragraphs 1 through 20 above as if fully set forth herein.

22. Experian violated 15 U.S.C. §1681i(a) on multiple occasions by:

a.  failing to delete inaccurate, incomplete or unverifiable information in the Harrises credit file after receiving actual notice of such inaccuracies;

b.  failing to delete inaccurate, incomplete or unverifiable information in the Harrises credit file after conducting a reinvestigation into the representations made in the credit file;

failing to provide notification to BOA and/or United Guaranty of disputes that the Harrises brought to the attention of Experian; and

  c. failing to maintain reasonable procedures with which to filter and verifify disputed information in the Harrises' credit file.

23. As a direct and proximate cause of Defendant Experian's conduct, action and inaction and the inclusion of false, inaccurate and/or misleading information in the Harrises' credit reports, the Harrises were harmed and entitled to damages as detailed below. The Harrises' injuries were the foreseeable consequences of Experian's conduct, action and inaction

24. Experian's conduct, action and inaction were willful, rendering it liable for punitive damages in an amount not less than $375,000 pursuant to 15 U.S.C. § 1681n.

25. Alternatively, Experian's conduct, action and inaction were negligent, entitling the Harrises to recover damages under 15 U.S.C. § 1681o.

  WHEREFORE, the Harrises request that this Court award the following damages:

  a. Actual damages in the amount of $625,000;

  b. Punitive damages in the amount of not less than $375,000;

  c. The Harrises' attorney's fees; and

  d. Any other relief this Court deems proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all issues raised in this Complaint.

Respectfully submitted,

/s/

**H. MARK STICHEL**
(Bar No. 02939)
Gohn, Hankey & Stichel, LLP
201 North Charles Street, Suite 2101
Baltimore, Maryland 21201
(410) 752-1658
(410) 752-2519 (facsimile)
email: hmstichel@ghsllp.com

**JOSEPH R. WELCH**
3475 Leonardtown Road, Suite 200
Waldorf, Maryland 20601

Attorneys for George C. Harris and
Doris J. Harris, Plaintiffs